UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSHUA D.,[1]                                    )
                                                 )
                        *Plaintiff*,             )
                                                 )
            v.                                   )        No. 1:21-cv-02228-JMS-TAB
                                                 )
KILOLO KIJAKAZI, *Commissioner of the Social*    )
*Security Administration*,                       )
                                                 )
                        *Defendant*.             )

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Joshua D. applied for a period of disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on May 14, 2009. [Filing No. 7-3 at 54-55.] On September 24, 2009, the SSA determined that Joshua D. was disabled due to Affective Mood Disorder and Human Immunodeficiency Virus ("HIV") infection. [Filing No. 7-3 at 55.] On May 25, 2017, the SSA performed a continuing disability review and determined that Joshua D. was no longer disabled as of May 1, 2017. [Filing No. 7-3 at 20.] On December 7, 2017, the SSA affirmed the cessation of benefits. [Filing No. 7-4 at 58-60.] Joshua D. requested a hearing and Administrative Law Judge Robert Long held a hearing on November 27, 2018, [Filing No. 7-2 at 152-194], and issued a decision on February 7, 2019 finding that Joshua D. was no longer disabled as of May 1, 2017, [Filing No. 7-3 at 33-45]. The Appeals Council remanded

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Administrative Law Judge Long's decision, [Filing No. 7-3 at 27-29], and Administrative Law Judge Kevin Walker ("the ALJ") held a hearing on March 10, 2021, [Filing No. 7-2 at 38-79]. On April 26, 2021, the ALJ issued a decision finding that Joshua D.'s disability ended on May 1, 2017 and that he could perform certain jobs in the national economy. [Filing No. 7-2 at 16-29.] The Appeals Council denied review on June 7, 2021. [Filing No. 7-2 at 2-4.] On August 11, 2021, Joshua D. timely filed this civil action asking the Court to review the denial of benefits under 42 U.S.C. § 1383(c). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*,

864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

When a claimant has been receiving disability benefits, the SSA may terminate those benefits under certain circumstances pursuant to 42 U.S.C. § 423(f), including that the basis for benefits "has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f).  A determination to cease benefits must be based on certain factors set forth in § 423(f) and must be made "on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.*

The SSA applies a seven-step evaluation to determine whether the claimant continues to have a disability.  20 C.F.R. § 416.994.  The ALJ must evaluate the following:

(1) Whether the claimant has "an impairment or combination of impairments which meets or equals the severity" of a listed impairment.  If so, the disability continues.

(2) If the claimant does not have an impairment or combination of impairments which meets or equals a listing, whether there has been "medical improvement as defined in [20 C.F.R. § 416.994(b)(1)(i)]."

(3) If there has been medical improvement, whether it is "related to [the claimant's] ability to do work."

(4) If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work and none of the exceptions in 20 C.F.R. § 416.994(b)(3) or (b)(4) apply, the disability continues.

(5) If medical improvement relates to the claimant's ability to work or if one of the exceptions to medical improvement applies, whether all of the claimant's current impairments in combination are severe.

(6) If the impairments are severe, the claimant's residual functional capacity ("RFC") will be assessed and the ALJ will determine whether the claimant can perform any past relevant work.

(7) If the claimant cannot perform past relevant work, the ALJ will determine whether the claimant can perform any work given his RFC.

20 C.F.R. § 416.994(b); *see also Huffman v. Berryhill*, 2017 WL 2920687, at *2 (S.D. Ind. June 19, 2017).  The claimant has the burden of proof for Steps One through Six, and the burden shifts to the Commissioner at Step Seven.  *Id.*; *see also Whittington v. Colvin*, 2016 WL 824858, at *2 (S.D. Ind. Feb. 5, 2016).

## II.
### BACKGROUND

Joshua D. was 32 years of age at the time his alleged disability began.  [*See* Filing No. 7-3 at 55.]  He has completed the tenth grade and previously worked at a public relations firm managing a database and corresponding with publishing companies.  [*See* Filing No. 7-2 at 46-47.][2]  Joshua D. also worked for a short time at a security company, and for two scooter companies where he redistributed and scanned scooters.  [Filing No. 7-2 at 48-53.]

The ALJ followed the seven-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.994 and ultimately concluded that Joshua D. has not been disabled since May 1, 2017.  [Filing No. 7-2 at 16-29.]  Specifically, the ALJ found as follows:

- At Step One, Joshua D. had the following medically determinable impairments at the time of the September 24, 2009 disability determination (the "Comparison Point Decision" or "CPD"): "major depressive disorder, anxiety disorder, and [HIV]." [Filing No. 7-2 at 18.] Since May 1, 2017, Joshua D. has had the following severe medically determinable impairments: "major depressive disorder; anxiety disorder; panic disorder; post-traumatic stress disorder; [HIV]; asthma; and degenerative disc disease cervical and lumbar spine." [Filing No. 7-2 at 18.] Since May 1, 2017, Joshua D. has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. [Filing No. 7-2 at 19-22.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

• At Step Two, medical improvement occurred on May 1, 2017. [Filing No. 7-2 at 22.]

• At Steps Three and Four, "[s]ince May 1, 2017, the impairments present at the time of the CPD decreased in medical severity to the point where [Joshua D.] had the [RFC] to perform medium work…except that he: can have occasional interactions with supervisors; cannot work at a production rate pace or meet strict production requirements, but can meet all end-of-day goals; can have no interaction with the public; [and] can be around coworkers throughout the day, but with only brief, incidental interaction with coworkers and no tandem job tasks requiring cooperation with coworkers." [Filing No. 7-2 at 22.] Joshua D.'s medical improvement is related to the ability to work "because it has resulted in an increase in [his RFC]." [Filing No. 7-2 at 22.]

• At Step Five, Joshua D. has continued to have a severe impairment or a combination of impairments. [Filing No. 7-2 at 23.]

• At Step Six, based on the current impairments, Joshua D. has had the RFC since May 1, 2017 "to perform light work as defined in 20 CFR 416.967(b) except that he: can sit, stand, or walk for two hours at a time and six hours in each eight-hour workday; can frequently push or pull up to the specific exertional limitations indicated; can frequently use hand or arm controls; can frequently climb, balance, stoop, kneel, crouch, or crawl; can occasionally be exposed to pulmonary irritants, including dusts, fumes, odors, or gases; can frequently be exposed to uneven walking surfaces; can frequently be exposed to unprotected heights or hazardous machinery; can have occasional interactions with supervisors; cannot work at a production rate pace or meet strict quota production requirements, but can meet all end-of-day goals; can have no interaction with the public; can be around coworkers throughout the day, but with only brief, incidental interaction with coworkers and no tandem job tasks requiring cooperation with coworkers." [Filing No. 7-2 at 23-27.]

• At Step Seven, Joshua D. has not been able to perform past relevant work since May 1, 2017 but, considering his age, education, work experience, and RFC, he has been able to perform a significant number of jobs in the national economy including marker, garment sorter, and checker I. [Filing No. 7-2 at 27-29.]

### III.
### DISCUSSION

Joshua D. raises four main issues: (1) that the ALJ erred by finding that Joshua D. had medically improved; (2) that the ALJ failed to adequately support the RFC determination; (3) that the ALJ posed flawed hypothetical questions to the Vocational Expert ("VE"); and (4) that the ALJ

5

failed to properly evaluate Joshua D.'s subjective statements.  [Filing No. 13 at 11-22.]  The Court will address each issue in turn.

### A.      Medical Improvement Finding

Joshua D. argues that although the Seventh Circuit Court of Appeals has not addressed the issue of what evidence an ALJ must consider and discuss in finding that a claimant has medically improved, caselaw from other circuits indicates that the evidence underlying the CPD – here, the decision finding Joshua D. disabled in 2009 – must be made part of the record.  [Filing No. 13 at 11.]  He asserts that "[o]therwise, no medical improvement can be found by the [SSA] as there can be no comparison of the evidentiary record against the earlier evidence that was a basis for finding the claimant disabled."  [Filing No. 13 at 11.]  Joshua D. contends that the ALJ did not obtain or consider the earlier claim file that was the basis of the finding that Joshua D. was disabled due to his medical impairments in 2009, so "remand is required for further fact-finding and development."  [Filing No. 13 at 11.]  He notes that the ALJ relied on a summary of some medical evidence from 2016, but the summary did not include the evidence that formed the basis for the CPD.  [Filing No. 13 at 11-12.]

In her response, the Commissioner argues that Joshua D. "proposes that this Court adopt a new hardline rule that substantial evidence never supports a finding of medical improvement unless all evidence underlying the CPD is first incorporated into the current record."  [Filing No. 15 at 9.]  She asserts that no binding authority required the ALJ to evaluate the entire prior record, and that the case upon which Joshua D. relies is not binding or persuasive.  [Filing No. 15 at 10-11.]  The Commissioner contends that "[t]he regulations do not require a detailed comparison between the prior medical records and the current medical records" and that an ALJ is "barred from reassessing a claimant's functioning during the prior period."  [Filing No. 15 at 10.]  She

6

argues that substantial evidence supported the ALJ's finding of medical improvement and that the evidence in the record before the ALJ "was sufficient to inform the ALJ of the severity of [Joshua D.'s] impairments at the time of his CPD in 2009." [Filing No. 15 at 11.]  The Commissioner explains that "[t]he ALJ compared the consultative examiner's observations in 2009 with current mental status evaluation findings indicating that [Joshua D.'s] functioning was typically normal." [Filing No. 15 at 11.]

Joshua D. did not file a reply brief.

"Medical improvement" is defined in 20 C.F.R. § 416.994(b)(1)(i) as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."  In finding that a claimant has medically improved, an ALJ must "substantiate his assessment of a claimant's [RFC]" by "build[ing] an accurate and logical bridge from the evidence to the conclusion." *Mulligan v. Astrue*, 336 Fed. App'x 571, 577 (7th Cir. 2009) (quotations and citations omitted).

As for Joshua D.'s medical improvement, the ALJ stated:

The record shows that prior to May 1, 2017, the claimant…was unable to carry out simple tasks for a full-time workweek due to his mental impairments and severe anxiety.  In particular, he was noted to be obsessive on examination with a ruminative thought process.  Further, he was described as impulsive, emotionally disinhibited, and irritable with a labile affect.  The claimant was assessed as having a global assessment of functioning (GAF) score measuring only 50, which reflected severe functional limitations.

However, the medical evidence supports a finding that, by May 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD.  For example, the claimant did not seek regular psychiatric treatment during much of the period at issue.  He made some occasional complaints of significant anxiety, but often denied experiencing any significant depression.  Although he occasionally displayed an anxious affect or impaired concentration, he was

generally cooperative on examination with good eye contact, a normal work pace, a euthymic affect, an intact memory, and appropriate attention or concentration. Accordingly, the record establishes that the claimant experienced medical improvement to the extent that his mental impairments no longer prevent him from performing some limited work activity on a regular and continuing basis.

[Filing No. 7-2 at 22 (internal citations omitted).]

In reaching his conclusion that Joshua D. had exhibited medical improvement, the ALJ did not rely on any medical records from before the CPD. Instead, he cited only to records from May 2017 forward. [*See* Filing No. 7-2 at 22 (citing Filing No. 7-4 at 48-57 (December 6, 2017 Summary of Evidence from the SSA); Filing No. 7-7 at 28-32 (April 13, 2017 Psychological Evaluation from Clinical Psychologist Amber Ruddock); Filing No. 7-7 at 46-52 (July 6, 2017 records from the Damien Center); Filing No. 7-7 at 58-93 (July 31, 2017 to August 8, 2017 records from Northeast Valley Health Corporation); Filing No. 7-7 at 94-102 (August 28, 2017 Physical Residual Functional Capacity Assessment); Filing No. 7-7 at 108-139 (August 8, 2017 to September 26, 2017 records from Northeast Valley Health Corporation); Filing No. 7-7 at 165-191 (June 26, 2018 to October 21, 2018 records from Lakeland Medical Center and Lakeland Hospital); Filing No. 7-7 at 193-201 (May 16, 2018 to August 17, 2018 records from InterCare); Filing No. 7-7 at 202-208 (May 25, 2018 to June 26, 2018 records from Lakeland Rehabilitation Services); Filing No. 7-7 at 209-212 (July 11, 2018 records from Mercy Infectious Disease); Filing No. 7-7 at 213-215 (October 5, 2018 records from Lakeland Rehabilitation Services); Filing No. 7-7 at 223-248 (June 19, 2019 to February 12, 2020 records from the Damien Center); Filing No. 7-8 at 2-15 (September 21, 2020 to November 9, 2020 records from the Damien Center); and Filing No. 7-8 at 16-19 (February 26, 2021 records from the Damien Center)).]

8

The only record upon which the ALJ relied for his finding that Joshua D. had medically improved that relates to the time period before the CPD is the following paragraph in the SSA's December 6, 2017 Summary of Evidence:

> Evidence at the [CPD] shows the claimant attended a psychiatric exam dated 08/2009.  At this exam the claimant had obsessive and ruminative thought processes.  He was impulsive and emotionally disinhibited.  He was irritable; he had a depressed mood and a labile affect.  He scored 50 on the global assessment of functioning (GAF) score.

[Filing No. 7-4 at 52.]  The ALJ's only explanation for finding that Joshua D. had medically improved was that records after the CPD established that he did not seek regular psychiatric treatment "during much of the period at issue"; he occasionally complained of significant anxiety but not of significant depression; and he occasionally displayed an anxious affect or impaired concentration, but was "generally cooperative on examination with good eye contact, a normal work pace, a euthymic affect, an intact memory, and appropriate attention or concentration." [Filing No. 7-2 at 22.]  The Court finds this analysis insufficient.

While the Court is not necessarily endorsing a bright-line rule that all pre-CPD evidence must be in the record and considered by the ALJ, the ALJ does need to build a logical bridge from the evidence to his conclusion.  *Mulligan*, 336 Fed. App'x at 577.  It is impossible for the Court to tell whether that was done here because the ALJ only mentioned a brief summary of some limited pre-CPD evidence.  *See Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011) ("Before limiting benefits to a closed period, an ALJ must conclude either than a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with [his] impairments, or else that an exception to this rule applies.")

The Court simply cannot determine what formed the basis for the ALJ's somewhat cursory decision that Joshua D.'s impairments present at the time of the CPD had improved.  *See Hathaway*

*v. Berryhill*, 687 Fed. App'x 81, 83 (2d Cir. 2017) (in order to determine whether claimant has experienced medical improvement such that benefits should cease, the ALJ "must examine the medical evidence that existed at the time of the initial disability determination and compare it to the new medical evidence, and submit both sets of medical evidence to [the] Court.  Absent these previous medical records, the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that [a present] condition represents an improvement.") (quotations and citations omitted); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("Congress intended the Secretary to compare an applicant's condition at the time of review with his or her condition at the time benefits were initially granted.");[3] *Smith v. Berryhill*, 2018 WL 2846363, at *5 (N.D. Ill. June 11, 2018) (remanding case where "without the benefit of the actual records and previous opinion, it is difficult to determine whether the ALJ made a proper comparison of the previous records and the current records [in finding that the claimant had medically improved]").

Because the ALJ failed to consider the medical records underlying the CPD – or, at the least, did not explain whether he considered those records and how they factored into his decision that Joshua D. had medically improved – this matter must be remanded.  In the interest of thoroughness, however, the Court discusses the remaining issues raised by Joshua D.

B.     **RFC Determination**

Joshua D. argues that the ALJ did not adequately support his finding that Joshua D. can perform a range of light exertional work because he "at least partially rejected the opinions from

---

[3] While Second Circuit authority is not binding on this Court, the Court agrees with the parties that the Seventh Circuit has not yet addressed this issue and finds the Second Circuit's reasoning persuasive.

every medical source in the record" and did not cite any specific medical factors or any "persuasive non-medical evidence" that supports the RFC finding. [Filing No. 13 at 13-14.]

The Commissioner argues that the ALJ "generously found [Joshua D.] limited to light exertional activity after three physicians found that he had either no work-related functional loss or remained capable of a range of medium exertional activity." [Filing No. 15 at 12.] The Commissioner notes the ALJ's evaluation of records that showed normal examination findings and that Joshua D. "sometimes demonstrated some abnormal findings and sometimes sought treatment for back pain, [but] his pursuit of treatment and examination findings were not consistent with disabling back pain or any other disabling symptoms." [Filing No. 15 at 12.] The Commissioner asserts that "if the ALJ had adopted any of the medical opinions related to [Joshua D.'s] physical ability to work, the ALJ would have assessed an RFC with fewer restrictions." [Filing No. 15 at 13 (emphasis omitted).] Finally, she contends that Joshua D. has not identified any evidence indicating that he had greater limitations than those set forth in the RFC. [Filing No. 15 at 13.]

Joshua D. did not file a reply brief.

The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your [RFC] based on all relevant evidence in your case record."); SSR 96-8p at *7 ("The RFC assessment must include a discussion of why

11

reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The ALJ found that Joshua D. had the RFC to perform light exertional work and, in doing so, explained his evaluation of Joshua D.'s medical records including that:

- Although he presented to Dr. Daniela Drake in May 2017 with some fatigue and significant neck and back pain, "he did not describe any significant breathing problems at the time" and "had some limited motion in the lumbar and cervical spine," but "demonstrated poor effort and still exhibited a normal gait, clear lungs, a negative straight leg raise test, and normal sensation, strength, and reflexes in the upper and lower extremities." [Filing No. 7-2 at 25.]

- He did not complain of poorly controlled breathing problems or other HIV symptoms, and while he had some "mildly limited strength in the lower extremities, [he] was generally well-nourished on examination with a full range of motion, a normal gait, no documented use of an assistive device, full motor strength, normal breath sounds, and an oxygen saturation level measuring 95 percent or above on room air." He also "did not seek or require any regular orthopedic or pulmonology consultations." [Filing No. 7-2 at 25.]

- Although the consultative physical examiner found that Joshua D. could perform "a reduced range of medium work with additional postural and environmental limitations," Joshua D. was limited to the exertional demands of light work "based on the other objective medical evidence and course of treatment" the ALJ outlined. [Filing No. 7-2 at 26.]

- Although the state agency medical consultants found that Joshua D. could perform a full range of medium work, he should be limited further "[b]ased upon the objective evidence and course of treatment." [Filing No. 7-2 at 26.]

- The testifying medical expert from the March 2020 hearing indicated that Joshua D. could perform a reduced range of medium work, but the opinion "was not based on a complete review of the relevant medical evidence." [Filing No. 7-2 at 26-27.]

- The state agency medical consultants and consultative examiners from the CPD found that Joshua D. could perform medium work, but that he could not carry out simple tasks for a full work week, but the opinions were not entirely consistent with the objective evidence and course of treatment the ALJ outlined. [Filing No. 7-2 at 27.]

The Court finds that the ALJ's characterization of the evidence is not completely accurate. For example, Joshua D. did request an orthopedic consultation, contrary to the ALJ's statement that he "did not seek…any regular orthopedic…consultation."  [*See* Filing No. 7-7 at 58 (medical provider noting:  "He would like PT and ortho referral").]  However, the ALJ actually restricted Joshua D. more than the limitations suggested by multiple medical providers who determined that he could perform work at the medium exertional level.  Further, Joshua D. does not point to any evidence in the record that supports a limitation greater than that of light exertional work.  *See Fanta v. Saul*, 848 Fed. App'x 655, 659 (7th Cir. 2021) (affirming ALJ's RFC finding where claimant did not "point to any objective evidence or medical opinions in the record that support stricter limitations"); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [the claimant's] limitations…because he hypothesizes none.")  While the Court does not ultimately find the ALJ's justification for the RFC to be problematic, the ALJ should ensure on remand that his characterization of the medical evidence is complete and accurate.

### C.   Hypothetical Questions to the VE

Joshua D. argues that even though the ALJ found that he had moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself, the hypothetical questions to the VE only limited Joshua D. "mentally to no work with a production pace or meeting strict quota production requirements but [he] could meet end of day goals; no interactions with the public; occasional interactions with supervisors; and work around co-workers throughout the day that involved only brief, incidental interactions but no tandem job tasks requiring cooperation with co-workers."  [Filing No. 13 at 14-15.]  Joshua D. asserts that the hypotheticals to the VE did not include any limitations in his ability to concentrate over a period

of time and persist at tasks. [Filing No. 13 at 15.] He also contends that when questioning the VE, the ALJ did not account for his finding that Joshua D. has moderate limitations in adaption or his ability to manage himself. [Filing No. 13 at 17.]

The Commissioner argues that the RFC, which the ALJ included in his questions to the VE, adequately accounts for Joshua D.'s moderate limitations in concentration, persistence, or maintaining pace and adapting or managing oneself. [Filing No. 15 at 14-17.] She notes that "[t]he ability to work at an appropriate and consistent pace and working close to or with others without interrupting or distracting them are both specific examples the regulations give related to the broad functional category of concentration, persistence, or maintaining pace," and that "[t]he ALJ found [Joshua D.] could not work at a production rate pace or meet strict quota production requirements, a limitation that clearly relates to his ability to persist and maintain pace." [Filing No. 15 at 15.] She also argues that the RFC limited Joshua D. to an environment that would reduce his anxiety and improve his ability to concentrate. [Filing No. 15 at 15.] The Commissioner asserts that the ALJ properly accounted for Joshua D.'s ability to adapt or manage himself by limiting his interaction with supervisors, the public, and coworkers. [Filing No. 15 at 15-16.]

The ALJ included in his hypothetical questions the limitations that Joshua D. "would not be able to work at a production rate pace or meet strict quota production requirements but could meet all end of day goals, would have no interaction with the public, could be around coworkers throughout the day but with only brief incidental interaction with coworkers, and no tandem job tasks requiring cooperation with coworkers." [Filing No. 7-2 at 74.]

The Seventh Circuit has found that individuals with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work." *Sims v. Barnhart*, 309 F.3d 424, 431-32 (7th Cir. 2002); *see also Jozefyk*, 923 F.3d at 498. It has also declined to require that

14

ALJs use any specific phrasing in their hypothetical questions to the VE regarding moderate limitations in concentration, persistence, or pace, finding instead that the limitations can be accounted for by including a quota or pace limitation in the hypothetical questions where those limitations come from a doctors' assessment of the claimant's abilities.  *See, e.g.*, *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).  While "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [VE's] consideration those positions that present significant problems of concentration, persistence and pace," omitting the terms "concentration, persistence, and pace" from the hypothetical questions to the VE is harmless "when it [is] manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

The Court finds that the ALJ's limitations in the hypothetical questions to the VE related to Joshua D.'s inability to work at a production rate pace or meet strict quota production requirements, no interaction with the public, brief incidental interaction with coworkers, and no tandem job tasks requiring cooperation with coworkers adequately accounted for Joshua D.'s limitations with concentration, persistence, and pace.  *See Burmester*, 920 F.3d at 511.  Further, Joshua D. has not pointed to any medical evidence in the record supporting greater limitations related to his difficulties with concentration, persistence, or pace.  *See Recha v. Saul*, 843 Fed. App'x 1, 5 (7th Cir. 2021) ("[A]n ALJ does not commit an error when there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.") (quotation and citation omitted).

However, the only limitations in the RFC that could relate to the ability to adapt or manage oneself are the limitations to no interaction with the public; brief, incidental interaction with

coworkers; and no tandem job tasks requiring cooperation with coworkers.  The domain of "adapting or managing oneself" is described as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.  Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 E. 4.  On remand, the ALJ should ensure that the limitations in the RFC, which he then incorporates into the hypothetical questions to the VE, adequately account for Joshua D.'s difficulties with the ability to adapt or manage himself.

### D.      Evaluation of Subjective Statements

Joshua D. argues that the ALJ failed to support his conclusion that Joshua D.'s statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence.  [Filing No. 13 at 19.]  He contends that the ALJ's decision was based on Joshua D. not receiving regular mental health treatment during the period at issue, having some response to the treatment that he did receive, finding insufficient objective or clinical evidence to substantiate Joshua D.'s allegations regarding his physical impairments, and his belief that Joshua D. would have sought more aggressive treatment for his physical issues if they were as limiting as he alleged.  [Filing No. 13 at 19.]  As for not obtaining regular treatment, Joshua D. points to losing SSI benefits in 2017 and his "limited insight and judgment."  [Filing No. 13 at 19-20.]  He also notes that his statements regarding his symptoms cannot be rejected simply because they are not confirmed by diagnostic tests.  [Filing No. 13 at 20-21.]  Additionally, he argues that the fact that he had a response to limited treatment is not evidence that he is not disabled, and that "[t]here is no evidence that [he] has had significant and sustained improvement to a degree that

16

conflicts with his allegations or that indicates he can perform a full-time job on a sustained basis."

[Filing No. 13 at 21.]

The Commissioner responds that Joshua D.'s statement that he lost SSI benefits in 2017 is incorrect and, instead, the record shows that he elected to continue receiving benefits while he appealed, resulting in an overpayment of those benefits. [Filing No. 15 at 17-18.] She contends that although the ALJ did not consider Joshua D.'s testimony that he had trouble finding a medical provider due to his limited medical insurance, the ALJ's observations regarding his course of treatment not being consistent with his allegations are still valid. [Filing No. 15 at 18.] As for Joshua D.'s claim that he had limited insight and judgment, the Commissioner argues that this limitation was not raised to the ALJ and that the evidence Joshua D. relies on actually shows that his insight and judgment were "fair" and not "limited" as he claims. [Filing No. 15 at 18-19.] She also notes that "multiple examiners throughout the relevant period found [him] to have average, normal, or good insight and judgment as well as average cognitive functioning." [Filing No. 15 at 19.] The Commissioner argues that it was appropriate for the ALJ to consider whether Joshua D.'s treatment was effective, pointing to Joshua D.'s testimony that he had "sustained work activity well exceeding substantial gainful activity in 2019," "that those jobs ended for reasons unrelated to his impairments," and that he "could work [if] given the right job." [Filing No. 15 at 19 (emphasis omitted).] The Commissioner also contends that Joshua D. was not prescribed a narcotic after 2018 and was only prescribed a short course of Prednisone, which does not indicate that he had long-term disabling pain. [Filing No. 15 at 19.] The Commissioner points to evidence that Joshua D.'s "physical examination findings were…consistently normal," including that he "routinely demonstrated normal range of motion, normal respiratory functioning, full strength, normal gait, intact sensation, and negative straight leg-raise testing," that he "exhibited logical

thought process, clear speech, average intellectual functioning, normal pace, intact memory, and appropriate attention and concentration even when he was not undergoing any mental health treatment," and that "despite his allegations of anxiety and irritability, he consistently presented with appropriate mood and affect." [Filing No. 15 at 20.]

Pursuant to SSR 16-3p, an ALJ must first determine whether there is an underlying medical impairment that could reasonably be expected to produce an individual's symptoms, such as pain. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Then, once an underlying impairment has been established, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Id. at *4. In doing so, the ALJ must consider objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. Id. at *4-8.

The ALJ explained in almost four pages why he was concluding that Joshua D.'s statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. [Filing No. 7-2 at 24-27.] In doing so, the ALJ discussed why Joshua D.'s complaints did not match the results of his medical

examinations, [Filing No. 7-2 at 24-25]; the fact that Joshua D. did not seek regular psychiatric treatment for much of the period at issue, [Filing No. 7-2 at 24-25]; the fact that he did not complain of psychological symptoms during late 2017, early 2018, late 2019, or most of 2020, [Filing No. 7-2 at 24]; the fact that he had poor effort during his examination related to neck and back pain and still exhibited "a normal gait, clear lungs, a negative straight leg raise test, and normal sensation, strength, and reflexes in the upper and lower extremities," his physical impairments were "relatively well-controlled," he did not seek regular treatment and "it is reasonable to assume that he would have found his symptoms severe enough to warrant more aggressive and consistent treatment during the period at issue," [Filing No. 7-2 at 25-26]; that he "generally exhibits a normal gait, no documented use of an assistive device, full motor strength, normal breath sounds, and an oxygen saturation level measuring 95 percent or above," [Filing No. 7-2 at 26]; and that "he is generally cooperative on examination with good eye contact, normal work pace, a euthymic affect, an intact memory, and appropriate attention or concentration," [Filing No. 7-2 at 26]. As discussed above, the ALJ went on to address the opinions of various medical professionals and imposed limitations greater than those suggested by several of those individuals. [Filing No. 7-2 at 26-27.]

Joshua D. points to the ALJ's failure to consider his indigency and his mental state as factors for why he did not seek more regular or aggressive treatment, the ALJ's reliance on the fact that Joshua D. had some response to limited treatment, and the ALJ's failure to give weight to the fact that medical providers had prescribed narcotic pain killers and steroids to Joshua D. [Filing No. 13 at 20-22.] The Court notes that "[a]n ALJ need not mention every piece of medical evidence in [his] opinion, but [he] cannot ignore a line of evidence contrary to [his] conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). While the ALJ discussed Joshua D.'s symptoms at length and articulated his reasoning for discrediting some of Joshua D.'s testimony as contrary to

the medical evidence, the ALJ must ensure on remand that he considers Joshua D.'s financial condition and mental state in connection with his failure to seek more regular or aggressive treatment.  The ALJ must also ensure that he does not place too much emphasis on Joshua D.'s response to limited treatment and that he considers the fact that medical providers prescribed narcotic pain killers and steroids to Joshua D. as part of his treatment.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision terminating Joshua D.'s benefits as of May 1, 2017 and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.  Final Judgment will issue accordingly.

Date: 6/1/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**